IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

JOHN DOE,

    Plaintiff,

v.                                          Case No. 18-CV-427

BOARD OF REGENTS OF THE
UNIVERSITY OF WISCONSIN SYSTEM;
UNIVERSITY OF WISCONSIN-
MILWAUKEE; NELIDA CORTES, in her
official capacity; JAMIE CIMPL-WIEMER,
in her official capacity; AND JOHANNES
BRITZ, in his official capacity,

    Defendants.

## BRIEF IN SUPPORT OF MOTION TO DISMISS

Plaintiff John Doe filed this lawsuit against the Board of Regents, the University of Wisconsin-Milwaukee, and Nelida Cortes, Jamie Cimpl-Wiemer, and Johannes Britz, in their official capacities. Doe brought only one claim against the defendants, under 42 U.S.C. § 1983, for violations of his substantive and procedural due process rights under the Fourteenth Amendment.

The defendants move to dismiss Doe's complaint in its entirety. The Board of Regents is not a "person" under Section 1983, and must be dismissed outright. The University of Wisconsin-Milwaukee is not a suable entity, and must be dismissed. The three individually named defendants are sued in their official capacities only; an official capacity claim is a claim against the state, and can only move forward under

1

Section 1983 if the plaintiff seeks prospective injunctive relief from a person with authority to provide that relief. Here, Doe seeks only retrospective relief to undo an administrative decision rendered by the University of Wisconsin-Milwaukee (UWM). UWM's administrative decision has already been appealed and dismissed on judicial review in Milwaukee County Circuit Court under Chapter 227 of the Wisconsin Statutes. Because there is no ongoing violation of federal law, Doe's claims are barred by the Eleventh Amendment.

**FACTS**

According to John Doe's complaint, the Defendants participated in an investigatory process initiated at UWM regarding allegations that John Doe ("Doe" or "John") sexually assaulted and harassed graduate student Jane Doe ("Jane") during a conference for the North American Nanohertz Observatory for Gravitational Waves ("NANOGrav").[1]

A.  Parties.

John Doe is a professor at an educational institution in Texas.[2] Jane Doe was a Ph.D. student at UWM.[3] The Board of Regents is an agency and arm of the State of Wisconsin, and the governing body of the University of Wisconsin System. The University of Wisconsin—Milwaukee is a State of Wisconsin public university. Nelida Cortes was the Interim Director of the Office of Equity and Diversity Services

---

[1] Compl ¶¶ 1, 6, dkt. 1:1-2.
[2] Compl. ¶ 1, dkt. 1:1.
[3] *Id.*

2

at the University. Jamie Cimpl-Wiemer was the Assistant Director of the Office of Equity and Diversity Services at the University. Johannes Britz was the Provost and Vice Chancellor for Academic Affairs at the University.[4]

## B. Jane Doe's allegations of sexual misconduct against John Doe.

In 2011, John and Jane were attending an industry conference for NANOGrav, a collaborative organization of which John and Jane were members. John alleges that he and Jane had consensual sexual intercourse and spent approximately six nights together during the ten-day conference. John alleges they began a "no strings attached" romantic relationship for almost 2 years.[5]

Jane submitted a complaint to NANOGrav dated October 19, 2014, alleging that John sexually assaulted and harassed her. In 2016, NANOGrav commenced an investigation into Jane's complaint. While NANOGrav lacked any policies to address complaints of sexual assault, John alleges that it undertook an investigation anyway and issued a defamatory report conveying John's alleged guilt of the allegations. John alleges that NANOGrav issued the report despite the lack of evidence of any assault, and the abundance of evidence corroborating Jane's consent for the almost two-year relationship.[6]

NANOGrav concluded that Jane had not given—and was in no position to give—consent to sexual intercourse at the Conference in June of 2011, and that she was subjected to sexual harassment on at least one occasion. NANOGrav further

---

[4] Compl. ¶¶ 11-15, dkt. 1:4-5.
[5] Compl. ¶¶ 1-2, dkt. 1:2.
[6] Compl. ¶ 5, dkt. 1:2.

3

concluded that John did not appreciate the imbalance of power in the relationship, or how it could cause Jane emotional and academic harm. NANOGrav determined that Jane Doe was "scarred" by her experiences as a NANOGrav member, and decided to leave the collaboration rather than attempt to work with John Doe and other male members. NANOGrav found that John Doe's inebriation in the presence of students and junior collaboration members demonstrated a lapse of judgment and caused discomfort to those around him.[7]

## C. The University's investigation.

At some point, the University was alerted to Jane's complaint. The University then launched its own investigation into the allegations of sexual assault and sexual harassment. Wiemer, the Assistant Director of the Office of Equity and Diversity Services at the University, filed a complaint to initiate an investigation into Jane's allegations against John. Wiemer allegedly filed the complaint because Jane did not want to file it herself.[8]

After undergoing a purportedly biased investigation with NANOGrav where the investigator refused to review or consider exculpatory text message evidence, John sought assurances from the University that he would be provided with a meaningful or fair opportunity to be heard.[9]

---

[7] Compl. ¶¶ 74, 77, dkt. 1:12-13.
[8] Compl. ¶ 80, dkt. 1:14.
[9] Compl. ¶ 89, dkt. 1:15.

4

Cortes, the Interim Director of the Office of Equity and Diversity Services at the University, investigated the allegations.[10] John retained counsel and, on the advice of counsel, invoked his Fifth Amendment right to silence to avoid any complications in the event that criminal charges were brought.[11] Ultimately, John believed the evidence and witnesses, once properly investigated, would support the consensual nature of their relationship.[12] NANOGrav members were interviewed as part of the University investigation process.[13]

On October 10, 2016, Cortes issued her investigation report and determination finding John Doe responsible for non-consensual sex and sexual harassment.[14] Cortes recommended that John have no contact with the University's students, that the University considering severing financial and academic ties with John, and/or take steps to strictly monitor and limit John's contact with the University students.[15]

John appealed Cortes's findings to demonstrate his innocence and contest Jane's allegedly false statements. On October 24, 2016, John submitted his appeal, along with numerous text messages between Jane and him, and between Jane and another witness, as support for his position. On November 22nd, Britz, the Provost and Vice Chancellor for Academic Affairs, denied John's appeal. The appeal decision said that the text messages failed to address Jane's sexual assault claim from their

---

[10] Compl. ¶ 92, dkt. 1:15.
[11] Compl. ¶ 90, dkt. 1:15.
[12] Compl. ¶ 91, dkt. 1:15.
[13] Compl. ¶ 80, dkt. 1:14.
[14] Compl. ¶ 92, dkt. 1:15-16.
[15] Compl. ¶ 93, dkt. 1:16.

5

first night in June 2011.[16] Doe sought judicial review in Milwaukee County Circuit Court on July 31, 2017. The case was dismissed as untimely.[17]

### D. John Doe's additional allegations.

John was shunned and pressured to voluntarily remove himself from NANOGrav. NANOGrav agreed to halt John's ejectment pending a favorable result in this lawsuit.[18]

John alleges the University wrongfully disclosed confidential information in violation of its own policy when Cortes advised John's employer of the University's intent to investigate the allegations of sexual assault and sexual harassment against John. In October 2016, Cortes sent a copy of her findings to John's employer. John's employer initiated its own investigation and demanded all pertinent documents and information related to the findings. The Provost at John's university requested that John keep him apprised of all developments in the case.[19]

John alleges the University also unlawfully shared the outcome of the erroneous appeal decision with NANOGrav causing John's position with NANOGrav to be irreparably compromised.[20]

---

[16] Compl. ¶¶ 106-108, dkt. 1:17-18.
[17] *See* John Doe v. Board of Regents, Milwaukee County Case No. 17-CV-6377, Wisconsin Circuit Court Access Website,
https://wcca.wicourts.gov/caseDetail.html?caseNo=2017CV006377&countyNo=40, (last visited June 7, 2017).
[18] Compl. ¶ 111, dkt. 1:18.
[19] Compl. ¶¶ 116-121, dkt. 1:19-20.
[20] Compl. ¶ 121, dkt. 1:20.

6

John alleges he has sustained tremendous damages to his reputation, threatened loss of employment, and financial damages due to compromised grants or future grant participation.[21]

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted." A motion to dismiss tests the sufficiency of the complaint; it does not determine the merits of the lawsuit. *See Triad Assocs., Inc. v. Chicago Hous. Auth.,* 892 F.2d 583, 586 (7th Cir. 1989). To survive a Rule 12(b)(6) challenge, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that it "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 545 (2007) (citation omitted).

Deciding a motion to dismiss, courts must accept the factual allegations as true, *see id.* at 572, in the light most favorable to the plaintiff. *Lavalais v. Vill. of Melrose Park,* 734 F.3d 629, 632 (7th Cir. 2013). However, a complaint cannot simply contain "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Rather, it must include specific allegations that, if true, make the plaintiff's claim for relief more than speculative. *See Twombly,* 550 U.S. at 555.

---

[21] Compl. ¶¶ 122-127, dkt. 1:20-21.

7

Case 2:18-cv-00427-PP   Filed 06/08/18   Page 7 of 20   Document 17

**ARGUMENT**

Plaintiff's claims must be dismissed because all of his claims fail under 42 U.S.C. § 1983. Neither the Board of Regents, nor the University, is a person for purposes of this federal statute. The University is not a suable entity. As for the official capacity claims against Cortes, Wiemer, and Britz, Plaintiff's claims fail because his complaint does not allege any ongoing constitutional violation on the part of these Defendants.

### I. Neither the Board of Regents, nor the University, is a "person" for purposes of claims brought under Title 42 U.S.C. § 1983.

Plaintiff brings his claims via 42 U.S.C. § 1983[22] against the Board and the University. These claims must be dismissed because neither the Board nor the University is a "person" under this federal statute. It is black letter law that a state, state agency, or an arm of the state is not a "person," and an entity is not subject to such a claim. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 67, 71 (1989); *Gleason v. Bd. of Educ. of City of Chicago*, 792 F.2d 76, 79 (7th Cir. 1986). The Board of Regents and the University are not persons, but rather an agency or arm of the State

---

[22] 42 U.S.C. § 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

8

of Wisconsin. (Compl. ¶¶ 11-12, dkt. 1:4.). Therefore, Plaintiff's section 1983 claims against these Defendants must be dismissed.

## II. The University is not a suable entity and must be dismissed.

Plaintiffs asserts his claims against UWM, but this Defendant is not a suable entity and must be dismissed. State law determines if this Defendant is suable in federal court. *See* Fed. R. Civ. P. 17(b);[23] *Busby v. Electric Utils. Employees Union*, 323 U.S. 72, 73 (1944) (*per curiam*). Under Wisconsin law, "a cause of action accrues where there exists a claim capable of present enforcement, *a suable party against whom it may be enforced*, and a party who has a present right to enforce it." *Employers Ins. of Wausau v. Smith,* 154 Wis. 2d 199, 231, 453 N.W.2d 856 (1990) (emphasis added).

Courts have routinely held that the university institutions belonging to the University of Wisconsin System are not suable entities under Wisconsin statutes. *See Derby v. University of Wisconsin*, 54 F.R.D. 599, 600 (E.D. Wis. 1972), *aff'd*, 489 F.2d 757 (7th Cir. 1973) ("the action may not be maintained against the University of Wisconsin or the University of Wisconsin-Parkside since they are not natural or corporate persons"); *Tadder v. Univ. of Wisconsin-Rock Cty.*, No. 13-CV-105-WMC, 2013 WL 3943498, at *2 (W.D. Wis. July 30, 2013) ("Defendants first contend that

---

[23] Federal Rule of Civil Procedure 17 reads, in pertinent part:
    **(b) Capacity to Sue or Be Sued.** Capacity to sue or be sued is determined as follows:
        **(1)** for an individual who is not acting in a representative capacity, by the law of the individual's domicile;
        **(2)** for a corporation, by the law under which it was organized; and
        **(3)** for all other parties, by the law of the state where the court is located.

9

UW–Rock County is not competent to sue and be sued under Wisconsin law. They are correct."); *Alawiye v. University of Wisconsin-Madison*, No. 06-CV-233-S, 2006 WL 1941999, *1 (W.D. Wis. July 11, 2006) ("University of Wisconsin-Madison is not a suable entity"). Here, the University of Wisconsin—Milwaukee is a school within the University of Wisconsin System and falls squarely within this general rule.

Because the Wisconsin Legislature did not confer suable status on the University, it is not a legal, suable entity and must be dismissed. *See Whiting v. Marathon Cty. Sheriff's Dep't,* 382 F.3d 700, 704 (7th Cir. 2004).

### III. The Eleventh Amendment bars the Plaintiff's official capacity claims against Cortes, Wiemer, and Fritz, and the *Ex Parte Young* exception does not apply.

The Plaintiff sued the remaining State officials in their official capacities.[24] The only relief Plaintiff requests is for the Court to "undo" the wrongs occasioned by the Defendants, including: (1) vacate the University's decisions regarding Jane's complaint of sexual assault and sexual harassment; (2) restrain the University from making any adverse disciplinary notation regarding John; (3) restrain the University from retaining any record related to John's disciplinary process; and (4) restrain the University from reporting any record of John's disciplinary process in response to third party inquiries.[25] He further seeks an order enjoining the University's decision on the basis of the University's lack of jurisdiction and reversing the decision on the basis that it was arbitrary and capricious.[26] John's complaint is nothing more than a

---

[24] Compl. ¶¶ 13-15, dkt. 1:4-5.
[25] Compl. ¶ 155 & Prayer for Relief ¶ A, dkt. 1:23-24.
[26] Compl. Prayer for Relief ¶¶ B & C, dkt. 1:24.

10

thinly veiled attempt to challenge the decision of an administrative agency of the State of Wisconsin in federal court. Because John has alleged no ongoing constitutional violation on the part of Cortes, Wiemer, or Fritz, his claims are barred under the Eleventh Amendment.

### A.  Overview of Eleventh Amendment immunity under 42 U.S.C. § 1983.

State officials acting in their official capacities are not "persons" for the purposes of an action under 42 U.S.C. § 1983. *Will,* 491 U.S. at 71. An official capacity suit against a state official is not a suit against the official but rather is a suit against the official's office, and "is no different from a suit against the State itself." *Id.* Thus, the Eleventh Amendment bars actions in federal court against state officials sued in their official capacities. *See Edelman v. Jordan,* 415 U.S. 651, 663 (1974); *Kentucky v. Graham,* 473 U.S. 159, 165-66 (1985); *Will,* 491 U.S. at 70-71; *MSA Realty Corp. v. State of Illinois*, 990 F.2d 288, 291 (7th Cir. 1993) (state officials sued in their official capacities cannot be sued for money damages).

There are three specific exceptions to Eleventh Amendment immunity to lawsuits in federal court: (1) Congress has abrogated the state's immunity from suit through an unequivocal expression of its intent to do so through a valid exercise of its power; (2) a state has properly waived its immunity and consented to suit in federal court; and (3) the plaintiff "seek[s] prospective equitable relief for ongoing violations of federal law … under the *Ex Parte Young* doctrine." *Sonnleitner v. York*, 304 F.3d 704, 717 (7th Cir. 2002) (citing *Marie O. v. Edgar*, 131 F.3d 610, 614-15 (7th Cir. 1997) (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55-56 (1996) and *Ex Parte*

11

*Young*, 209 U.S. 123, 159-60 (1908))). Here, the first two exceptions do not apply because Congress has not abrogated the State's immunity from suit under section 1983,[27] and Wisconsin has not waived its immunity and consented to suit.

As for the third exception, State employees may be sued in their official capacities in federal court, but *only* for prospective relief to end ongoing violations of federal constitutional law or statutory provisions. *Ex parte Young*, 209 U.S. 123, 156-57 (1908). To avoid the Eleventh Amendment bar, a plaintiff must allege that the state officer is currently acting in violation of federal law. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).

The complaint must seek prospective relief to address this ongoing violation, not compensation or other retrospective relief for violations past. *Green v. Mansour*, 474 U.S. 64, 68 (1985); *Quern v. Jordan*, 440 U.S. 332, 346-49 (1979). As the Seventh Circuit has explained, "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges [1] an ongoing violation of federal law and [2] seeks relief properly characterized as prospective.'" *Amundson ex rel. Amundson v. Wisconsin Dep't of Health Servs.*, 721 F.3d 871, 873 (7th Cir. 2013) (citing *Verizon Maryland Inc. v. Public Service Commission of Maryland,* 535 U.S. 635, 645 (2002)); *MCI Telecommunications Corp. v. Illinois Bell Telephone Co.*, 222 F.3d 323, 336-37 (7th Cir. 2000). When the plaintiff does not allege an "ongoing

---

[27] *See* Section I, *supra*.

12

violation of federal law," a federal court may not issue equitable relief. *Watkins v. Blinzinger*, 789 F.2d 474, 484 (7th Cir. 1986).

"To take advantage of *Young* the plaintiffs must sue the particular public official whose acts violate federal law." *David B. v. McDonald,* 156 F.3d 780, 783 (7th Cir. 1998).

### B. The Complaint alleges no on-going violation of Plaintiff's substantive and procedural due process rights.

Here, the Plaintiff sued three State employees in their official capacities: (1) Nelida Cortes, the Interim Director of the Office of Equity and Diversity Services; (2) Jamie Cimpl-Wiemer, the Assistant Director of the Office of Equity and Diversity Services; and (3) Johannes Britz, the Provost and Vice Chancellor for Academic Affairs at the University. But the Complaint fails to allege any ongoing violation of Plaintiff's substantive and procedural due process rights. Rather, the Complaint only speaks of these State officials' past actions related to the sexual assault and harassment complaint, investigation, and decision.

#### 1. Plaintiff alleges no ongoing constitutional violation of his procedural due process rights.

Plaintiff fails to state a procedural due process claim, and, even if he did, he fails to state any ongoing constitutional violation on the part of Cortes, Wiemer, and Britz.

To demonstrate a procedural due process violation, a plaintiff must establish all of the following elements: (1) a cognizable liberty or property interest under the

13

Fourteenth Amendment; (2) a deprivation of that liberty or property interest; and (3) a denial of due process. *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013). Plaintiff did not state a procedural due process claim because he was never denied process. Wisconsin has a judicial review procedure that Doe did not properly utilize.[28] Failure to avail oneself of available post-deprivation procedures does not equate to a constitutional denial of procedure. *See, e.g., Leavell v. Illinois Dep't of Nat. Res.*, 600 F.3d 798, 805 (7th Cir. 2010). Nonetheless, John Doe's claim fails as pled because there is no alleged ongoing violation of his procedural due process rights and thus his claims are barred by the Eleventh Amendment.

In *Sonnleitner v. York*, 304 F.3d 704 (7th Cir. 2002), the court affirmed dismissal of Sonnleitner's official capacity claim for injunctive relief requesting reinstatement to a supervisory position based on alleged procedural due process violations when he was improperly demoted without a predisciplinary hearing depriving him of his right to be a supervisor. The Seventh Circuit acknowledged that Sonnleitner's request for reinstatement can "certainly be characterized as prospective relief," but it ultimately held: "we do not believe that the underlying procedural due process claim can be reasonably construed as 'ongoing.'" *Id.* at 718. The court reasoned, "the violation was not the demotion as such, but, instead, the fact that the demotion occurred without an adequate opportunity to be heard, either through an additional predisciplinary hearing or a sufficiently prompt post-disciplinary hearing." *Id.* The court found that the allegations alleged, at most, a past rather than ongoing

---

[28] *See* footnote 4, *supra*.

14

violation of federal law. *Id.* Because the allegations did not fit the narrow exception of *Ex Parte Young*, the Seventh Circuit concluded the official capacity claims were barred by the Eleventh Amendment. *Id.* at 718-19.

Similarly, John Doe's allegations against Cortes, Wiemer, and Fritz are, at most, past rather than ongoing purported violations of federal law. He alleges:

- Wiemer filed a third-party complaint of sexual harassment and sexual assault against John without standing;

- Wiemer filed the third-party complaint with the University after the 300-day deadline expired;

- Defendants exercised jurisdiction over John in the absence of statutory authority;

- The University's findings disregarded relevant, overwhelming evidence that vitiated Jane Doe's credibility about her claims, and were arbitrary and capricious;

- Cortes investigated and facilitated the wrongful determination against John Doe in a manner that deprived him of his constitutionally protected rights, without due process; and

- Britz denied John's appeal notwithstanding the University's procedural failures and the evidentiary weaknesses of the complaint.

Like the plaintiff's complaint in *Sonnleitner*, all of the above allegations concern past purported due process violations, rather than an ongoing violation of federal law.

Thus, John Doe's official capacity procedural due process claims against Cortes, Wiemer, and Britz must be dismissed.

### 2. Plaintiff alleges no ongoing constitutional violation of his substantive due process rights.

Plaintiff's substantive due process claim fails because he has no fundamental right to privacy in this circumstance and the Defendants did not arbitrarily deprive him of a fundamental liberty interest in privacy or his reputation.

While the Fourteenth Amendment generally prohibits the deprivation, without due process of law, of a person's "life, liberty, or property," *Smith v. Bd. of Educ. of Urbana Sch. Dist. No. 116 of Champaign Cty.,* 708 F.2d 258, 261 (7th Cir. 1983), "[t]he substantive due process doctrine is rooted in the notion that some rights and liberty interests are so fundamental that no amount of process would justify government interference." *Olejnik v. England*, 147 F. Supp. 3d 763, 776 (W.D. Wis. 2015) (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998)). "A right is sufficiently fundamental to warrant substantive due process protection when it is very deeply rooted in our history and legal traditions, and it 'is implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed.'" *Id.* (citations omitted).

The Supreme Court has held that substantive due process protects the freedoms specifically enumerated in the Bill of Rights in addition to certain non-enumerated rights, including the rights to marry, to have children, to direct the education and upbringing of one's children, and to enjoy marital privacy, use

16

contraception, have bodily integrity, and to have an abortion. *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997) (citing cases). The Supreme Court has been reluctant to enlarge the list of rights protected by substantive due process "because guideposts for responsible decision-making in this unchartered area are scarce and open-ended." *Id.*

Substantive due process "also protects non-fundamental liberty interests from arbitrary, unjustified government action." *Olejnik*, 147 F. Supp. 3d at 776 (citing *Belcher v. Norton*, 497 F.3d 742, 753 (7th Cir. 2007), *as amended* (Nov. 19, 2007)). Government officials violate substantive due process if their actions are "so arbitrary and irrational that, when the court considers all circumstances, it 'shocks the conscience.'" *Olejnik,* 147 F. Supp. 3d at 777 (quoting *Lee v. City of Chicago*, 330 F.3d 456, 467 (7th Cir. 2003)). The Supreme Court has described the threshold question as "whether the behavior of the government officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998), *abrogated on other grounds by Saucier v. Katz*, 533 U.S. 194 (2001). "[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Id.* at 849.

Both the Supreme Court and the Seventh Circuit have "emphasized how limited the scope of the substantive due process doctrine is." *Lee v. City of Chicago*, 330 F.3d 456, 467 (7th Cir. 2003) (citations omitted); *see, also, Gen. Auto Serv. Station v. City of Chicago*, 526 F.3d 991, 1000 (7th Cir. 2008)

17

Plaintiff's substantive due process claim does not allege deprivation of a fundamental right protected under the Fourteenth Amendment regardless of pre- or post-deprivation process, and it falls far short of the required conduct that is so egregious, so outrageous, and unjustifiable by any government interest that it may be said to shock the conscience. This is especially true given the University's obligation under Title IX to investigate allegations of sexual misconduct regardless of whether the alleged victim has complained. *See, e.g., Doe v. Univ. of Notre Dame Du Lac*, No. 3:17CV690-PPS, 2018 WL 2184392, at *3 (N.D. Ind. May 11, 2018). Once the University has been notified about sexual misconduct allegations, it has an obligation to the larger community to investigate the matter. *Id.* This obligation creates an obvious government interest in investigating and protecting University students from future sexual harassment on campus or at conferences the University students attend. Cortes's purported disclosure to John Doe's employer in Texas, a university also presumably subject to Title IX, comports with this important government interest and obligation under Title IX. And, regardless, any conscience-shocking, arbitrary deprivation on the part of Cortes, Wiemer, or Britz that related to this investigation occurred in the past. Because Plaintiff has sued these Defendants only in their official capacities for prospective injunctive relief, his substantive due process claim is barred by the Eleventh Amendment.

**IV. Plaintiff's claim for declaratory relief is barred by the Eleventh Amendment.**

Plaintiff's claim for declaratory relief does not save his case from dismissal. In *Green v. Mansour,* 474 U.S. 64, 73 (1985), the Supreme Court held that the

18

Eleventh Amendment bars a federal court from issuing a declaratory judgment that state officials in their official capacities committed past violations of federal law when there is no allegation of a continuing violation of federal law. *Green*, 474 U.S. at 73. The court stated that an issuance of a declaratory judgment in such a situation is useful only in the sense that "it might be offered in state court proceedings as *res judicata* on the issue of liability ... [and] would have much the same effect as a full-fledged award of damages or restitution by the federal court [against the state], [which is] of course prohibited by the Eleventh Amendment." *Id.* Thus, for all the reasons in the above Sections I-III, the Court should dismiss Plaintiff's claim for declaratory judgment as barred by the Eleventh Amendment.

## CONCLUSION

The Defendants request the Court to dismiss all of Plaintiff's claims for failure to state a claim upon which relief can be granted.

Dated this 8th day of June, 2018.

                                        Respectfully submitted,

                                        BRAD D. SCHIMEL
                                        Wisconsin Attorney General

                                        <u>s/Rachel L. Bachhuber</u>
                                        RACHEL L. BACHHUBER
                                        Assistant Attorney General
                                        State Bar #1052533

                                        Attorneys for Defendants

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-0188
(608) 267-8906 (Fax)
bachhuberrl@doj.state.wi.us