---

JOHN DOE,

Plaintiff,

-against-

Case No. 18-cv-427-PP

NELIDA CORTES, in her individual capacity; JAMIE
CIMPL-WIEMER, in her individual capacity; and
JOHANNES BRITZ, in his individual capacity,

Defendants.

---

## MEMORANDUM OF LAW IN OPPOSITION TO
## MOTION TO DISMISS

---

## PRELIMINARY STATEMENT

Plaintiff is a professor at a university in Texas. He had a consensual relationship with a University of Wisconsin-Milwaukee ("UWM") graduate student. At no time during the relationship did he visit UWM's campus or the State of Wisconsin. The relationship ended, and after the graduate student finished her studies at UWM, allegations of sexual misconduct were brought to the University's attention by someone other than the student.

Over Plaintiff's protest, Defendants investigated these allegations and ultimately concluded (despite evidence to the contrary) that Plaintiff had engaged in misconduct. During and after the investigation, Defendants informed Plaintiff's employer about the status and results of the investigation, tarnishing Plaintiff's reputation. Plaintiff's employer has informed Plaintiff that he will be terminated if his appeal is not successful. Moreover, the allegations and subsequent

investigation came outside of the limitations period. This is additional evidence of a reckless deprivation of Plaintiff's rights – rights that are clearly established in the law.

Plaintiff seeks redress for the investigation and the publication by Defendants to his current employer. Plaintiff has a liberty interest in not being subjected to proceedings by a foreign sovereignty. This liberty interest has been infringed upon by an investigation involving a former student and alleged conduct that occurred outside the State of Wisconsin. Defendants' actions have also infringed Plaintiff's property interests, as he has lost salary, grants, and professional opportunities. Plaintiff's liberty interests in his right to pursue his occupation and in his reputation have also been infringed upon. Plaintiff has stated cognizable claims, and Defendants' motion should be denied and the case allowed to proceed.

## FACTS

John Doe is a resident of the State of Texas and employed by a university with campuses exclusively in the State of Texas. Doc. 25 at ¶¶ 1. John Doe engaged in a consensual relationship with Jane Doe, a graduate student at UWM. Doc. 25 at ¶ 1. John Doe and Jane Doe met at a conference for a group of like-minded scientists in Morgantown, West Virginia. Doc. 25 at ¶ 1. John Doe and Jane Doe engaged in a no-strings-attached relationship for nearly two years before Jane Doe indicated that she wanted a more conventional relationship. Doc. 25 at ¶¶ 2, 4. John Doe was not interested in such an arrangement, and the relationship dissolved. Doc. 25 at ¶ 4.

Nearly three years after John Doe and Jane's relationship ended and after Jane Doe had graduated from UWM, an undisclosed third-party informed UWM that Jane Doe alleged that John Doe sexually assaulted her and that their entire nearly two year relationship constituted sexual harassment. Doc. 25 at ¶¶ 6, 77, 81. Defendant Jamie Cimpl-Wiemer ("Wiemer"), UWM's Assistant Director of the Office of Equity and Diversity Services ("EDS"), filed a report based on

the allegations against John Doe. Doc. 25 at ¶¶ 77, 148. John Doe never engaged in any of the allegedly offending behavior at UWM or in the State of Wisconsin. Doc. 25 at ¶ 6. John Doe and Jane Doe's relationship never took place on UWM property. Doc. 25 at ¶ 81. John Doe did not have and still does not have any link or connection with the State of Wisconsin or UWM. Doc. 25 at ¶ 6. John Doe was never employed by UWM. Doc. 25 at ¶ 79. He never maintained a regular presence on UWM's campus and was never on UWM's campus at any time during his relationship with Jane Doe. Doc. 25 at ¶ 80.

Despite that Jane Doe was no longer a student and John Doe had no connection to UWM or the State of Wisconsin, Defendant Nelida Cortes ("Cortes") initiated an investigation of Jane Doe's allegations against John Doe based on the report filed by Wiemer. Doc. 25 at ¶¶ 6, 170. During the investigation, Cortes improperly contacted John Doe's employer to report the allegations pending against John Doe. Doc. 25 at ¶¶ 7, 176. John Doe provided evidence indicating that he did not sexually assault Jane Doe, but Cortes ignored this evidence and declared John Doe responsible for sexual assault and sexual harassment. Doc. 25 at ¶¶ 6, 104, 141, 173. Cortes also improperly provided John Doe's employer with a copy of the UWM report noting a finding that John Doe was "responsible" of sexual harassment and sexual assault. Doc. 25 at ¶¶ 6, 177.

John Doe appealed the initial finding, but that appeal was denied by Defendant Johannes Britz ("Britz") who, like Cortes, ignored relevant exculpatory evidence. Doc. 25 at ¶¶ 105, 141, 178, 179. In denying the appeal, Britz failed to provide John Doe with the statutorily required notice of his right to petition for rehearing and administrative or judicial review. Nonetheless, John Doe submitted a Notice of Claim to the Wisconsin Attorney General and sought a remedy of

UWM's errors in the Wisconsin state court system. John Doe's attempt to obtain satisfaction in the Wisconsin state court system failed. This action followed.

## LEGAL STANDARD

A Rule 12(b)(6) motion tests the sufficiency of a plaintiff's claims as plead in the initial pleadings. In order to survive such a motion, the plaintiff's pleadings must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court draws all reasonable inferences and facts in favor of the nonmoving plaintiff but need not accept as true any legal assertions. *Vesely v. Armslist LLC*, 762 F.3d 661, 664-65 (7th Cir. 2014).

## ARGUMENT

### I.    Plaintiff Should be Permitted to Proceed Using a Pseudonym

This case does not involve embarrassment for past immoral or irresponsible behavior as stated by Defendants. Rather, John Doe contends that he has been improperly branded as a perpetrator of sexual assault and sexual harassment. Because cases such as the instant matter demand "the disclosure of 'information of the utmost intimacy,'" courts in this District have permitted plaintiffs fighting allegations of sexual misconduct to litigate using pseudonyms. *See, e.g., Doe v. Purdue Univ.*, 321 F.R.D. 339, 342 (N.D. Ind. 2017). Additionally, "[o]ther courts have permitted plaintiffs alleging similar claims against colleges and universities to proceed anonymously." *Id.* (citing cases).

Moreover, this Court has held that the typical "presumption that the parties' identities are public information can be rebutted by showing that the harm to the party requesting anonymity

exceeds the likely harm to the defendant and to the public from concealment." *Ashford v. City of Milwaukee*, 2014 U.S. Dist. LEXIS 1590 at *2-*3 (E.D. Wisc. Jan 2, 2014). While permitting a plaintiff accused of sexual assault to utilize a pseudonym, the Northern District of Indiana in *Doe v. Purdue Univ.* stated:

> If Plaintiff's identity is revealed, Plaintiff would suffer the very harm to his reputation that he seeks to remedy by bringing this lawsuit; in other words, if Plaintiff is successful in proving that the charges of sexual misconduct against him were unfounded and that Defendants' procedures violated his due process rights, the revelation of Plaintiff's identity "would further exacerbate the emotional and reputational injuries he alleges."

*Doe v. Purdue Univ.*, 321 F.R.D. at 342 (quoting *Doe v. Colgate Univ.*, 2016 U.S. Dist. LEXIS 48787, No. 5:15-cv-1069 (LEK/DEP), at *3 (N.D.N.Y. Apr. 12, 2016). John Doe similarly maintains that the reputational harm caused by Defendants' actions will be heightened if he is required to proceed using his real name. Additionally, there is no harm to Defendants if John Doe is permitted to proceed anonymously. Defendants are aware of John Doe's true identity and will therefore not be constrained in any way during discovery. Moreover, the public will not be harmed if John Doe uses a pseudonym in this matter, as knowledge of John Doe's true identity will not impact the public's understanding of the basis of his claims.

Defendants' assertion that John Doe's request for anonymity defeats his claim on the merits is baseless, conclusory, and unsupported. While it is certain that John Doe's reputation has been tarnished by Defendants' actions, he has the potential for redemption by succeeding on his claim. If he fails, he will need to seek professional opportunities outside of the community that has already digested Defendants' improper publication of stigmatizing behavior. Even if he succeeds, John Doe has an interest in keeping the facts of this matter from entering the general public discourse. Accordingly, the Court should permit John Doe to proceed anonymously in this action.

## II.     Defendants Improperly Exercised Jurisdiction Over Plaintiff in Violation of His Substantive Due Process Rights

Defendants lacked jurisdiction over John Doe pursuant to Wisconsin statutory law and UWM's procedures.  As discussed below, this failure to obtain proper jurisdiction of John Doe constitutes a violation of his substantive due process rights.

UWM and the Board of Regents are considered administrative agencies, and, under Wisconsin law, they are "tribunals of limited jurisdiction dependent upon a statutory grant of authority."  *Bd. of Regents of Univ. of Wis. Sys. v. Wis. Personnel Commission*, 103 Wis. 2d 545, 552 (Ct. App. 1981).  Therefore, UWM and the Board of Regents' jurisdiction is defined by the statute that grants them the authority to take such action.  If the statute does not grant such authority, then there is no jurisdiction.  Wisconsin Statute § 36.12 grants UWM and Board of Regents authority over student discrimination matters such as the allegation giving rise to this matter:

> (1) No student may be denied admission to, participation in or the benefits of, or be discriminated against in any service, program, course or facility of the system or its institutions because of the student's race, color, creed, religion, sex, national origin, disability, ancestry, age, sexual orientation, pregnancy, marital status or parental status.
>
> (2)
>
> > (a) The board shall direct each institution to establish policies and procedures to protect students from discrimination under sub. (1). The policies and procedures shall do all of the following:
> >
> > . . .
> >
> > > 3. Require a complainant to file a complaint with the institution within 300 days of the alleged violation of sub. (1).

Wis. Stat. § 36.12.

UWM's Discriminatory Conduct Policy (Including Sexual Harassment and Sexual Violence (the "Discrimination Policy"), states that complaints "must be filed within 300 calendar

days of the most recent alleged prohibited act….." (emphasis added). Doc. 25 at ¶ 94. In an attempt to circumvent the 300-day deadline imposed by the Discrimination Policy, UWM asserted that it can take complaints beyond the 300-day deadline for "good cause." Doc. 25 at ¶ 95. However, Defendants "good cause" policy is facially void for vagueness because "good cause" is undefined and arbitrarily applied. Moreover, the policy is void as applied to John Doe because no "good cause" was articulated in this matter. Doc. 25 at ¶ 95. Additionally, the Discrimination Policy clearly indicates that the Discrimination Policy only applies to individuals who were on campus at UWM. Doc. 25 at ¶ 162. The Discrimination Policy references UWM's commitment to "building and maintaining a *campus environment*." (emphasis added). Doc. 25 at ¶ 162. The Discrimination Policy also provides three examples of visitors and guests that are also protected under the Discrimination Policy – "a high school student participating in a UWM recruitment program, a visiting student athlete, or a visitor in a UWM residence hall." Doc. 25 at ¶ 162. These examples show that the Discrimination Policy only applies to events that occur on UWM's campus. Moreover, the Discrimination Policy only applies to "administrators, faculty, staff, students, and visitors," not former students or non-employees who are not visitors. Doc. 25 at ¶ 164.

Plaintiff's Amended Complaint, which must be taken as true at this stage of the litigation, asserts that Jane Doe was not a student at UWM when the investigation into John Doe's alleged misconduct was commenced. Doc. 25 at ¶¶ 6, 152, 160. Moreover, the Amended Complaint states that Wiemer filed a complaint on Jane Doe's behalf than 300 days after any alleged improper behavior by Plaintiff. Doc. 25 at ¶ 77, 148, 169. Similarly, Cortes initiated an investigation and Britz conducted the appeal even though the complaint was filed outside of the 300-day deadline. Doc. 25 at ¶¶ 6, 105, 141, 170. Further, Plaintiff's Amended Complaint asserts that he is a resident of the State of Texas and has no definite link or connection to UWM or the State of Wisconsin.

Doc. 25 at ¶¶ 1, 6, 80, 150, 151. Additionally, none of John Doe's alleged offending behavior occurred on UWM's campus (or even in the State of Wisconsin), nor was John Doe ever an administrator, faculty member, staff member, student, or visitor at UWM. Doc. 25 at ¶¶ 79, 153, 160, 162, 164.

These facts, when taken as true, establish that UWM and the Board of Regents lacked jurisdiction over Plaintiff pursuant to Wisconsin Statute § 36.12 or the Discrimination Policy. Because UWM and the Board of Regents lacked personal and subject-matter jurisdiction over the investigation, UWM's determination that Plaintiff was responsible for any alleged misconduct against Jane Doe is void. *Bd. of Regents*, 103 Wis. 2d at 552 ("Administrative determinations made without subject-matter jurisdiction are void."); *see also Bus. & Prof'l People for the Pub. Interest v. Ill. Commerce Comm'n*, 136 Ill. 2d 192, 243, 244 (1989) (noting that when "an agency acts outside its statutory authority, it acts without jurisdiction" and that "a decision by an agency which lacks personal or subject matter jurisdiction . . . [is] void."); *County of Knox ex rel. Masterson v. Highlands*, 723 N.E.2d 256 (Ill. 1999).

As noted by the Supreme Court, "due process requires some definite link, some minimum connection, between a state and the person, property or transaction" for that state to properly exercise jurisdiction over an individual. *Miller Bros. Co. v. Maryland*, 347 U.S. 340, 344-45 (1954). Moreover, "[w]hen there is an issue of judicial or administrative authority over an out-of-state party, personal jurisdiction issues are analyzed according to the due process and minimum contacts standards articulated by the United States Supreme Court in . . . *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)." *Cavers v. Houston McLane Co.*, 2008 ME 164, *P17 (2008); *see also Wyttenbach v. Bd. of Tenn. Med. Examiners*, No. M2014-02024-COA-R3-CV, 2016 Tenn. App. LEXIS 192 at *11 (Ct. App. Mar. 15, 2016) ("When the

issue is an administrative agency's authority over an out-of-state party, courts apply the same personal jurisdiction principles applicable to judicial authority."); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) ("due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'") (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

In *Miller Bros. Co.*, the State of Maryland sought to assert its taxation authority over a vendor based in Delaware in violation of the Fourteenth Amendment. *Miller Bros. Co*, 347 U.S. at 341. The Delaware vendor only sold goods directly to customers at its store in Delaware, did not take orders by mail or telephone, and sometimes delivered goods to customers in Maryland after they purchased the goods at the store in Delaware. *Id*. The Supreme Court determined that the State of Maryland lacked jurisdiction over the vendor because the vendor had no "definite link" or "minimum connection" with the State of Maryland. *Id*. at 344-47.

John Doe has a liberty interest in "not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (quoting *Int'l Shoe Co.*, 326 U.S. at 319). The allegations in Plaintiff's Amended Complaint, which must be accepted as true, clearly allege that John Doe has no "definite link" or "meaningful" connection to UWM or the State of Wisconsin and has not engaged in any course of dealing that would subject him to UWM's or the State of Wisconsin's authority. Indeed, Plaintiff's connection with UWM and the State of Wisconsin is even less than the Delaware vendor's connection to the State of Maryland in *Miller Bros. Co.* – it is non-existent. As an administrative arm of the State of Wisconsin, UWM and the Board of Regents improperly and arbitrarily exercised their jurisdiction over John Doe in violation of his substantive due process

rights, as he has no "definite link" or "meaningful connection" with the State of Wisconsin. *See Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (noting, "the Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.'").

In an apparent preemptive response to Plaintiff's jurisdictional argument, Defendants' incorrectly associate jurisdiction with procedural due process when the issue of jurisdiction is one of substantive due process. Indeed, the cases cited by Defendants to support their contention that no due process violation flows from UWM's failure to follow its own procedures and the law of the State of Wisconsin reached such a conclusion when analyzing a claim of a violation of procedural due process. *See Charleston v. Bd. of Trs. of the Univ. of Ill. at Chi..*, 741 F.3d 769 at 774 (7th Cir. 2013) (finding no need to no need to "proceed to the second step of the procedural due process analysis" after noting that a university's failure to follow its own contractually-guaranteed procedures is not unconstitutional); *Osteen v. Henley*, 13 F.3d 221, 224-25 (7th Cir. 1993) (noting allegations of deficiencies in a university disciplinary proceeding before noting that "a violation of state law (for the purposes of this case the student judicial code may be treated as a state law) is not a denial of due process, even if the state law confers a procedural right."); *Smith v. Utah Valley Univ.*, 619 F. App'x. 559, 560 (noting that "a public institution's failure to follow state-specified procedures does not violate due process."). Additionally, the facts of these cases involve students who were enrolled at the subject universities, not stale claims brought against professors employed at another university in another state more than 1,500 miles away.

While the First Amended Complaint does contain allegations that Defendants failed to follow their own procedures, John Doe asserts that UWM simply had no jurisdiction to initiate a proceeding against him. Defendants improperly assume that their ability to disregard UWM's

procedures and Wisconsin law means that they had jurisdiction over John Doe despite his lack of any "definite link" or "meaningful" connection to UWM or the State of Wisconsin and his failure to engage in a course of dealing that would subject him to UWM's or the State of Wisconsin's authority. *See Miller Bros. Co*, 347 U.S. at 344-45. This improper application of jurisdiction deprived John Doe of his liberty interest in "not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *See Burger King Corp.*, 471 U.S. at 471-72 (quoting *Int'l Shoe Co.*, 326 U.S. at 319).

Contrary to Defendants' contentions, John Doe did not fail to avail himself of Wisconsin post-deprivation procedures. When it issued its decision on John Doe's appeal, UWM failed to provide the proper notice of his further appeal rights. Wisconsin Statute § 227.48 requires that "[e]ach decision shall include notice of any right of the parties to petition for rehearing and administrative or judicial review of adverse decisions, the time allowed for filing each petition and identification of the party to be named as respondent." Even so, John Doe filed a Notice of Claim with the Wisconsin Attorney General and pursued his claim in the Wisconsin state court system. Admittedly, John Doe did not prevail in the Wisconsin state court action, as the Court determined that his appeal was untimely despite UWM's failure to provide the statutorily required notice. However, it cannot be said that he failed to avail himself of Wisconsin's post-deprivation procedures.

Even if the Court determines that John Doe did fail to avail himself of Wisconsin's post-deprivation procedures, such a failure would not require the dismissal of John Doe's substantive due process claims, including his claim that the Defendants improperly exercised jurisdiction over him. The cases cited by Defendants do not support their position show that such a failure would be fatal to John Doe's substantive due process claims. In *Leavell v. Ill. Dep't of Nat. Res.*, 600

F.3d 798 (7th Cir. 2010), which Defendants cite for support, the plaintiff did not assert a substantive due process claim. Rather, the Seventh Circuit dismissed the plaintiff's procedural due process claim because plaintiff failed to avail herself of available state remedies. *Leavell*, 600 F.3d at 804-5. After dismissing the plaintiff's procedural due process claim in *Doherty v. City of Chicago*, 75 F.3d 318 (7th Cir. 1995), the Seventh Circuit noted that "a plaintiff desiring to bring a substantive due process claim is required to show either the inadequacy of state law remedies **or** an independent constitutional violation." *Doherty v. City of Chicago*, 75 F.3d 318, 326 (7th Cir. 1995) (emphasis added). The Seventh Circuit has also held that a plaintiff can successfully bring a substantive due process cause of action when the state actor's actions are arbitrary. In the substantive due process context, a state actor's actions are arbitrary when they are "utterly unreasonable."

The allegations contained in John Doe's Amended Complaint, which must be taken as true at this state of the litigation, show that Defendants' actions were "utterly unreasonable" and, therefore, arbitrary in the context of this Court's substantive due process analysis:

> A restriction on a form of liberty not explicitly codified in the Bill of Rights or singled out by the courts for special protection under such rubrics as "right to privacy" and "fundamental rights" violates the due process clause only if utterly unreasonable -- that is what "arbitrary" means in this setting -- and it is less likely to be found so if it is a regulation of public employees than if it is a regulation of private citizens.

*Swank v. Smart*, 898 F.2d 1247, 1252 (7th Cir. 1990).[1] In order to prevail on his substantive due process claims, John Doe must show that there is no rational connection between Defendants'

---

[1] Plaintiff only relies on *Swank* for the limited purpose of asserting that violations of substantive due process are not limited to fundamental constitutional violations. In *Swank*, the Seventh Circuit declined to find a violation of substantive due process where a married police officer was fired for conduct unbecoming of a police officer for taking a 17-year-old college student for a ride on his motorcycle. 898 F.2d at 1253. The Seventh Circuit noted, "the appearance of impropriety was there -- in a married man's giving a teenage girl whom he had never met before a motorcycle ride late at night -- and the judgment displayed by Swank poor." *Id.* Here, Plaintiff's First Amended Complaint asserts that two unmarried adults engaged in a consensual relationship.

behavior and the accomplishment of a public purpose. *See Pence v. Rosenquist,* 573 F.2d 395, 398 (7th Cir. 1978).

UWM's improper extension of its jurisdiction was utterly unreasonable and without any rational basis. As noted in Plaintiff's First Amended Complaint, Jane Doe was not a student at UWM when the investigation into John Doe's alleged misconduct was commenced. Doc. 25 at ¶¶ 6, 152, 160. John Doe is a resident of the State of Texas and has no definite link or connection to UWM or the State of Wisconsin. Doc. 25 at ¶¶ 1, 6, 80, 150, 151. John Doe has never been employed by UWM or participated in any event sponsored by UWM. Doc. 25 at ¶¶ 6, 160. None of the allegedly offending behavior took place at UWM or in the State of Wisconsin, and John Doe has never been administrator, faculty member, staff member, student, or visitor at UWM. Doc. 25 at ¶¶ 79, 153, 160, 162, 164. John Doe clearly did not engage in any pattern of behavior that would have subjected him to UWM's or the State of Wisconsin's jurisdictional authority. Moreover, the third-party complaint that ultimately resulted in this litigation was improperly filed more than 300 days after any alleged improper behavior by John Doe. Doc. 25 at ¶ 77, 148, 169. These facts show that UWM's exercise of jurisdiction over John Doe was utterly unreasonable. Moreover, there can be no rational basis for UWM's actions, as its improper exercise of jurisdiction when John Doe lacked any contacts with UWM or the State of Wisconsin "offend[s] 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co.*, 326 U.S. at 316 (quoting *Milliken*, 311 U.S. at 463). Accordingly, Plaintiff has successfully pled that UWM improperly exerted jurisdiction over him in violation of his substantive due process rights.

### III.    Plaintiff Has Adequately Pled Additional Violations of Substantive Due Process

As noted in Section II, Defendants' exercise of improper jurisdiction violated Plaintiff's substantive due process rights. However, even if the Court finds that Defendants properly

exercised jurisdiction over him, Plaintiff asserts that the First Amended Complaint adequately asserts additional violations of Plaintiff's substantive due process rights.

### A. John Doe Has Successfully Pled a Protected Liberty Interest in His Reputation

John Doe has successfully pled that Defendants' damaged his reputation to such an extent that it satisfies the stigma-plus test. Plaintiff's First Amended Complaint asserts (1) that Defendants' actions have stigmatized him; (2) that Defendants publicly disclosed the stigmatizing information; and (3) that he has suffered a tangible loss of employment opportunities as a result of Defendants' disclosure because he has been constructively discharged from his current position. *See Head v. Chi. Sch. Reform Bd. of Trs.*, 225 F.3d 794, 801 (7th Cir. 2000). Defendants stigmatized John Doe by reaching the improper conclusion that he committed sexual assault and sexual harassment. Defendants publicly disclosed stigmatizing information by (1) improperly informing John Doe's employer that they were investigating him based on allegations of sexual assault and sexual harassment and (2) improperly disclosing the findings of their biased report finding him responsible for sexual assault and sexual harassment. Doc. 25 at ¶¶ 176-77.

Defendants' actions have led to John Doe's constructive discharge, a tangible loss of John's employment opportunities. The Seventh Circuit has defined constructive discharge as "the situation in which an employer, without firing an employee, makes his working conditions so miserable that it drives him to quit." *Hunt v. City of Markham*, 219 F.3d 649, 655 (7th Cir. 2000). However, an individual need not quit his job in order to successfully assert that he has been constructively discharged. *Id*. (noting that "a person may out of desperation or simple stubbornness cling to his job despite provocations that would cause the average person to quit in disgust."); *see also Wozniak v. Conry*, 236 F.3d 888, 890 (7th Cir. 2000) (an employee's failure to quit "is not fatal to reliance on a theory of constructive discharge"). Indeed, the Seventh Circuit

has found that constructive discharge occurs when "[a] person who is told repeatedly that he is not wanted, has no future, and can't count on ever getting another raise." *Hunt*, 219 F.3 at 655. (noting that such a person "would not be acting unreasonably if he decided that to remain with this employer would necessarily be inconsistent with even a minimal sense of self-respect, and therefore intolerable.").

The allegations contained in Plaintiff's First Amended Complaint indicate that he is not wanted, has no future at his current job, and will not receive another raise as a result of Defendants' action. He has lost privileges, staff and research project rights. Doc. 25 at ¶ 7. John Doe maintains that he has been deprived of various professional opportunities because of Defendants' erroneous findings, including a denial of a promotion to full professorship, which would have included a $12,000 per year raise, the loss of an endowed chair position and the related loss of $30,000 in yearly salary, and removal as director of an academic center that he founded, leading to the loss of $15,000 per year in salary. Doc. 25 at ¶¶ 9, 184-86. Additionally, John Doe maintains that he has received a written warning that will remain a permanent part of his employment record because of Defendants' actions and that this will brand him *persona non grata* in academia when he is terminated from his current position following an unfavorable decision in this matter. Doc. 25 at ¶ 9. John Doe further maintains that Defendants' actions have caused former collaborators to stop crediting his work, reference his publications, or include him as an author of published work in which he took part, which has eliminated his ability to obtain funding, promotions, awards, and raises. Doc. 25 at ¶ 183. Without the ability to obtain funding or publish his work, John Doe will not be able to obtain another position if he is terminated from his current role. Moreover, John Doe has been removed from the academic, research, and social circles of his occupation, further

proof of the damage that has been done to his reputation and career by Defendants' actions. Doc. 25 at ¶ 187.

The cases cited by Defendants to support their position that John Doe has not been deprived of a liberty interest in his reputation are distinguishable from the instant matter. In the majority of the cases, the plaintiffs were seeking redress from actions taken by their employers. *See, e.g., O'Gorman v. City of Chi.*, 777 F.3d 885 (7th Cir. 2015); *Head*, 225 F.3d 794; *Lashbrook v. Oerkfitz*, 65 F.3d 1339 (7th Cir. 1995). Here, John Doe is seeking redress from actions taken by the state, which resulted in consequences affecting his employment.

Moreover, unlike the plaintiff in *Simpkins v. Sandwich Community Hospital*, 854 F.2d 215 (7th Cir. 1988), which Defendants also cite for support, John Doe will not be "free and able to work for any employer in [his] field." *Simpkins*, 854 F.2d at 218. Rather, his inability to obtain grant funding and the written warning included in his employment record resulting from Defendants' actions will prevent him from obtaining any position as a university professor.

Additionally, unlike the plaintiffs in *Simpkins, Yatvin v. Madison Metropolitan School Dist.,* 840 F.2d 412 (7th Cir. 1988) and *Ratliff v. Milwaukee*, 795 F.2d 612 (7th Cir. 1986), cited by Defendants for support, John Doe has alleged that Cortes publicized stigmatizing information about him when she disclosed the UWM investigation and its outcome to his employer. Indeed, John Doe maintains that Cortes "disseminated the stigmatizing information in a manner which would reach future potential employers of the plaintiff or the community at large," which is sufficient to show that Defendants impinged on his liberty interest. *Ratliff*, 795 F.2d at 627.

In *Head*, the plaintiff's due process cause of action was denied because he pleaded himself out of court by asserting that the defendants published allegations of ineptitude and professional inadequacy, claims that do not impose a stigma that infringes on an individual's liberty to pursue

an occupation. 225 F.3d at 802. Indeed, the Seventh Circuit found that, but for this error, the plaintiff had successfully pled a claim for a violation of a protected liberty interest. *Id*. at 801. The Seventh Circuit noted that a plaintiff is not required to plead facts sufficient to establish the legal elements of his alleged due process violation to survive a motion to dismiss. *Id.* Instead, a plaintiff is only required to put the defendant "on notice as to the gravamen of Head's due process liberty interest claim." *Id.* Plaintiff's First Amended Complaint provides clear notice of John Doe's allegations that Defendants abridged his protected liberty and property interests. As a result, Plaintiff's First Amended Complaint is sufficient to survive the Defendants' Motion to Dismiss.

In the instant matter, John Doe asserts that Defendants improperly accused him of sexual assault and sexual harassment, not mere professional incompetence. He also alleges that Defendants publicly disseminated their accusation and improper findings. These accusations and findings clearly impugn John Doe's moral character and, therefore, rise to the level of stigmatizing conduct. *See Hedrich v. Bd. of Regents of the Univ. of Wis. Sys.,* 274 F.3d 1174, 1184 (7th Cir. 2001). John Doe maintains that Defendants' statements led directly to, *inter alia*, the loss of his endowed chair, the loss of his promotion to full professorship, and, eventually, his constructive discharge. Accordingly, John Doe has properly pled a substantive due process violation of his protected liberty interest in his reputation.

### B. John Doe Has Successfully Plead a Protected Property Interest

Plaintiff's First Amended Complaint also maintains that Defendants' actions have deprived him of his property interest in his salary and his professional responsibilities and privileges. In *Wozniak*, the Seventh Circuit determined that the plaintiff asserted a cognizable property interest within the meaning of the due process clause when he asserted that the defendants' actions led to the loss of research funds, future scholarly publications, recognition within his profession, the

possibility of outside consulting work, and the potential for a promotion to full professor. *Wozniak*, 236 F.3d at 889-90. While the Seventh Circuit in *Wozniak* considered the plaintiff's property interest as part of his procedural due process claim, the Seventh Circuit has considered property interests in the substantive due process context. *See New Burnham Prairie Homes, Inc. v. Burnham*, 910 F.2d 1474, 1480 (7th Cir. 1990) ("This court has acknowledged that a substantive due process claim can be brought in the context of property interests."). Here, John Doe has alleged that he has been denied a promotion to full professorship, lost research funds and non-grant funding, lost his endowed chair, lost opportunities to have his work credited or referenced, and lost opportunities to have his work published. Doc. 25 at ¶¶ 9, 183. Accordingly, he has properly plead a violation of a protected property interest.

### C. John Doe Has Successfully Pled a Protected Occupational Liberty Interest

Plaintiff's First Amended Complaint also shows that Defendants' actions have grossly impacted his occupational liberty. John has become obsolete in his profession, excised from its academic, research, and social circles. Doc. 25 at ¶¶ 183, 187. The written warning in his employment file will make him *persona non grata* in academia once he is fired following an unfavorable decision in this matter. Doc. 25 at ¶ 9.

Occupational liberty is undoubtedly a cognizable liberty interest under the Due Process Clause. *See Wroblewski v. Washburn*, 965 F.2d 452 ("The concept of liberty protected by the due process clause has long included occupational liberty— 'the liberty to follow a trade, profession, or other calling.'") (internal citations omitted). While the cases cited by Defendants indicate that there is no substantive due process cause of action for a violation of a plaintiff's occupational liberty they are distinguishable from the instant matter. In *Zorzi v. County of Putnam*, 30 F.3d 885 (7th Cir. 1994), which is relied upon by Defendants. the plaintiff was suing her former employer

for wrongful termination. Here, Plaintiff is asserting a violation of his occupational liberty based upon actions taken by a school where he does not work and with which he has no connection. In *Horstmann v. St. Clair County*, 295 F. App'x. 61 (7th Cir. 2008), also cited by Defendants, the Seventh Circuit entertained the plaintiff's substantive due process claim linked to his alleged wrongful termination, noting that the plaintiff must demonstrate the violation of another constitutional right or that available state remedies are inadequate. *Horstmann*, 295 F. App'x. at 64. The Seventh Circuit, however, failed to mention the established principle that a plaintiff can prevail on a non-fundamental right substantive due process claim when the defendant's actions are "utterly unreasonable." *See Swank*, 898 F.2d at 1252. Moreover, the Seventh Circuit has recognized that issues as minimal as the ability to wear a mustache are protected substantive due process interests when a state actor's behavior is not rationally related to the accomplishment of a public purpose. *See Pence*, 573 F.2d 395 (7th Cir. 1978). As discussed throughout this brief and reiterated below, Defendants' actions were utterly unreasonable in the instant matter and not rationally related to any public purpose. Accordingly, Plaintiff should be permitted to proceed with all of his substantive due process claims.

### D. Defendants' Actions Interfering With Plaintiff's Protected Liberty and Property Interests Were Utterly Unreasonable

The allegations contained in John Doe's Amended Complaint show that Defendants' actions were "utterly unreasonable" and, therefore, arbitrary in the context of this Court's substantive due process analysis. *See Swank*, 898 F.2d at 1252. Defendants' actions also lacked any rational connection to the accomplishment of a public purpose. *See Pence,* 573 F.2d at 398. As noted extensively above, Defendants' exercise of jurisdiction over John Doe was unreasonable given his lack of any connection to UWM or the State of Wisconsin. Such an improper exercise of jurisdiction can serve no rational purpose because it "offend[s] 'traditional notions of fair play

and substantial justice.'" *Int'l Shoe Co.*, 326 U.S. at 316 (quoting *Milliken*, 311 U.S. at 463). Defendants actions are also utterly unreasonable in light of Jane Doe's graduation from UWM. The only conceivable basis for UWM to initiate and investigation would be to protect Jane Doe's educational interests. However, Jane Doe was no longer a student and John Doe had no connection to UWM when the investigation commenced. There was simply no reason for UWM to investigate the claim against John Doe. Accordingly, Plaintiff should be permitted to proceed with his claims that Defendants violated his liberty interest in his reputation, his property interest in his salary and his professional responsibilities and privileges, and his liberty interest in pursuing his occupation.

Defendants will likely assert that their actions were rationally related to UWM's interest in protecting its students from coming into contact with Plaintiff at some point in the future. Such an argument would be pure speculation. Moreover, it is an exceedingly remote possibility. John Doe has no connection to UWM and has never attended a UWM-sponsored event. Defendants, therefore, has no rational basis for asserting that John Doe will ever interact with one of UWM's students in the future. Defendants are also likely to assert that they were required to investigate the complaint pursuant to Title IX. As discussed below, such an assertion would be faulty.

## IV.   Defendants Are Not Entitled to Qualified Immunity

Defendants are not entitled to qualified immunity. When considering an assertion of qualified immunity, "liability is not predicated upon the existence of a prior case that is directly on point." *Nabozny v. Podlesny*, 92 F.3d 446, 456 (7th Cir. 1996). Rather,

> in order for a plaintiff to successfully defeat a qualified immunity defense, two conditions must be satisfied: (1) the complaint must adequately allege facts that, if true, would constitute a violation of a constitutional right; (2) the case law must be "clearly established" at the time of the alleged violation, so that a reasonable public official would have know (*sic*) that his conduct was unlawful.

*Delgado v. Jones*, 282 F.3d 511, 515-16 (7th Cir. 2002). As discussed extensively above, Plaintiff's First Amended Complaint asserts that Defendants' violated his substantive due process

rights. The only issue then is whether Defendants should have been aware that their alleged violations were unlawful.

Few lines of case law are more clearly established than the one prohibiting the improper exercise of jurisdiction over a citizen lacking certain minimum contacts with the forum. *See Int'l Shoe Co.*, 326 U.S. at 316 ("due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'") (quoting *Milliken*, 311 U.S. at 463); *see also Miller Bros. Co.*, 347 U.S. at 344-45 ("due process requires some definite link, some minimum connection, between a state and the person, property or transaction" for the proper exercise jurisdiction over an individual). Defendants should have known that their exercise of jurisdiction was unlawful. Accordingly, they are not entitled to qualified immunity.

Moreover, as members of UWM's disciplinary system, Defendants should have known that Jane Doe's allegations against John Doe did not trigger any obligation to investigate pursuant to Title IX. According to the United States Department of Education's April 4, 2011 Dear Colleague Letter ("DCL")[2] that was in effect at the time that Jane Doe alleges John Doe's offending behavior occurred, "Title IX protects students from sexual harassment in a school's education programs and activities." U.S. Dep't of Ed. April 4, 2011 Dear Colleague Letter at Page 3 (https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.pdf). The DCL noted that the purpose of Title IX is to eradicate the "hostile environment" fostered by sexual harassment that "interferes with or limits a student's ability to participate in or benefit from the school's program." *Id*.

---

[2] Plaintiff is aware that the DCL has since been withdrawn and replaced as of September 22, 2017. However, Plaintiff references the former DCL because it was in effect at the time Wiemer improperly opened UWM's investigation.

As noted by the United State Department of Education Office of Civil Rights' Revised Sexual Harassment Guidance:  Harassment of Students by School Employees, Other Students, or Third Parties dated January 19, 2001 (the "2001 Guidance"), "Title IX protects students in connection with all of the academic, educational, extra-curricular, athletic, and other programs of the school, whether they take place in the facilities of the school, on a school bus, at a class or training program sponsored by the school at another location, or elsewhere."  U.S. Dep't of Ed. Office of Civil Rights Revised Sexual Harassment Guidance:  Harassment of Students by School Employees, Other Students, or Third Parties, Section III (https://www2.ed.gov/about/offices/list/ocr/docs/shguide.html) (emphasis added); *see also* U.S. Dep't of Ed. April 4, 2011 Dear Colleague Letter at Page 3.

In *Yeasin v. Univ. of Kan.*, 360 P.3d 423 (Kan. Ct. App. 2015) the Court of Appeals of Kansas noted as follows regarding the DCL:

> Note the letter does not direct the school to take action off-campus. Instead, the letter clearly advises that the school must take steps to prevent or eliminate a sexually hostile environment. It seems obvious that the only environment the University can control is on campus or at University sponsored or supervised events. After all, the University is not an agency of law enforcement but is rather an institution of learning.

*Yeasin*, 360 P.3d at 430.  The Kansas Court of Appeals went on to note that any power for a university to extend its jurisdiction to off-campus misconduct must be found within the relevant student code of conduct and cannot be based on the belief "that the authority should be there based on the University's own interpretation of Title IX."  *Id.*

The facts of this matter are clear -- Jane Doe was not a student when the third-party complaint of sexual assault and sexual harassment against John Doe was filed; John Doe was not employed by UWM when the third-party complaint of sexual assault and sexual harassment was filed against him; John Doe was never present on UWM's campus or at any of UWM's programs

on or off campus during the time when the alleged offending conduct occurred; none of the alleged offending conduct occurred on UWM's campus or in connection with any UWM program. Doc. 25 at ¶ 160. The UWM Discrimination policy does not apply to John Doe or Jane Doe, as neither was an administrator, faculty member, staff member, student, or visitor when the third-party complaint against John Doe was filed. Doc. 25 at ¶ 164. Further, the UWM Discrimination Policy Discrimination Policy only applies to events that occur on UWM's campus. Doc. 25 at ¶ 162. Thus, UWM cannot assert that it's Title IX powers extend to off-campus occurrences. *See Yeasin*, 360 P.3d at 430. No alleged behavior by John Doe could have created a "hostile environment" that would have interfered with Jane Doe's "ability to participate in or benefit from UWM's program" requiring an investigation of John Doe by Defendants pursuant to Title IX. Defendants should have been aware that they were improperly enforcing Title IX. As a result, they cannot be afforded qualified immunity.

**<u>CONCLUSION</u>**

For the reasons stated above, Plaintiff John Doe respectfully requests that the Court deny Defendants' Motion to Dismiss Plaintiff's First Amended Complaint.

Dated:   Milwaukee, Wisconsin
         October 19, 2018

Respectfully submitted,

s/Christopher M. Meuler
Christopher M. Meuler, Esq. (WI SBN 1037971)
Davis & Kuelthau, s.c.
111 East Kilbourn Avenue, Suite 1400
Milwaukee, WI 53202
Tel:  (414) 276-0200
Email:  cmeuler@dkattorneys.com

-and-

s/Kimberly C. Lau
_____
Kimberly C. Lau, Esq. (admitted *pro hac vice*)
Warshaw Burstein, LLP
555 Fifth Avenue
New York, NY 10017
Tel: (212) 984-7709
Email: klau@wbny.com

*Attorneys for Plaintiff John Doe*